UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SERGIO J. GRANADOS,

                Petitioner,

v.

R. MARQUES,

                Respondent.

Case No. 19-cv-0837 (ECT/ECW)

**REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner Sergio Granados's ("Granados") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1) ("Petition"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that the Petition be dismissed without prejudice.

        **I.**        **FACTUAL AND PROCEDURAL BACKGROUND**

Granados was convicted of (1) Aiding and Abetting a Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Heroin, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846; (2) Aiding and Abetting the Distribution of Cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); (3) Aiding and Abetting the Possession with Intent to Distribute Cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); (4) Aiding and Abetting the Possession with Intent to Distribute and Distribution of Cocaine and Heroin, in violation of 18 U.S.C. § 2 and 21 U.S.C. §

1

841(a)(1); (5) Aiding and Abetting the Employment or Use of Persons Under 18 Years of Age to Distribute Cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 861(a)(1); (6) Aiding and Abetting the Distribution of a Controlled Substance to a Person Under Age 21, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 859(a); and (7) Aiding and Abetting Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 924(c)(1). (Dkt. No. 10-1.) On June 10, 1996, Granados was sentenced in the District of North Dakota to a 348-month term of imprisonment followed by an eight-year term of supervision, which was subsequently modified to an aggregated 336-month term of imprisonment followed by an eight-year term of supervised release. (*Id.*) Granados has a projected release date of April 15, 2020 via good time release. (Dkt. No. 10 ¶ 3; Dkt. No. 10-1.)

In his Petition, Granados challenges the delayed implementation of the First Step Act of 2018. (Dkt. No. 1 at 2.) Granados claims that requiring him to exhaust administrative remedies in this case would be futile due to the time sensitive nature of his request for relief and the Bureau of Prisons ("BOP") general policy set forth in a "bulletin" of delayed implementation of the First Step Act. (*Id.* at 3, 6-7; *see also* Dkt. No. 2 at 5-6; Dkt. No. 3.) Granados requests that the BOP be ordered to immediately award him the good time credit he asserts he would be entitled to under the calculation set forth in the First Step Act, constituting an extra 7 days of good time credit per year for a total of 196 extra days. (*Id.* at 7-8, Dkt. No. 2 at 14; Dkt. No. 8-1.) According to Granados, the late implementation of the First Step Act will result in a shortened placement for him in a residential reentry center prior to his release. (Dkt. No. 8-1.)

## II.   ANALYSIS

**A.   Exhaustion of Administrative Remedies**

As set forth above, Granados concedes that he did not exhaust his administrative remedies prior to bringing the present Petition because of time constraints and the futility of such a process given the BOP's established position.  The BOP does not argue that the Petition should be denied due to a failure to exhaust administrative remedies.

Generally, federal prisoners must exhaust all available administrative remedies prior to seeking federal habeas corpus relief under 28 U.S.C. § 2241.  *See United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009).  However, because the concept of exhaustion for § 2241 petitions is judicially created and not mandated by statute, the Court has discretion to determine if the exhaustion requirement must be met.  *See Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (holding that failure to exhaust does not affect a court's ability to decide cases where "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional").

In "balancing the individual's interest in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion," courts have concluded that the exhaustion requirement may be excused due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose.  *McCarthy v. Madigan*, 503 U.S. 140, 146, 148 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir.

3

2004) (exhaustion requirement waived based on government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile").

In this case, the balancing of interests favors having the issue raised by Granados promptly decided over the institutional interests protected by the exhaustion requirement, especially in light of the fact that the BOP has established its position as it relates to the effective date of the First Step Act. Therefore, the Court waives the exhaustion requirement and reaches the merits of Granados's claim.

**B.     Background Related to the First Step Act**

Prior to the First Step Act, the Sentencing Reform Act of 1984 modified the rate at which federal prisoners could earn good time credit, setting forth in 18 U.S.C. § 3624(b) that:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of **up to 54 days at the end of each year of the prisoner's term of imprisonmen**t, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1) (emphasis added).

In implementing § 3624(b), the BOP counted the 54 days set forth in the statute against "time actually served" as opposed to the sentence "as imposed," resulting in federal prisoners only receiving 47 days of credit for each year of the term of imprisonment. *See Barber v. Thomas*, 560 U.S. 474, 477-79, 482-83 (2010). The BOP's

interpretation of the good time credit provision in § 3624 was upheld as a reasonable interpretation of the statute by the Supreme Court. *Id.* at 480. Pursuant to *Barber,* eligible federal prisoners received 47 days of good time credit for each year of the term of imprisonment.

The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018),[1] enacted on December 21, 2018, amended the good conduct time statute, § 3624(b), and provides in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, **of up to 54 days for each year of the prisoner's sentence imposed by the court**, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1) *as amended by* Pub. L. 115–391, § 102(b)(1)(A)(i), 132 Stat. 5194, 5210 (emphasis added).

The First Step Act addressed the Supreme Court's decision in *Barber v. Thomas* by removing the language providing for 54 days of good time credit at the end of each year of a prisoner's "term of imprisonment" and substituting language providing 54 days of good time credit for each year of the prisoner's "sentence imposed by the court." 132 Stat. at 5210. As such, the amendment of § 3624(b) by the First Step Act will result in the recalculation of the projected release dates of most current inmates (other than those serving sentences for offenses committed before November 1, 1987, and sentences to life

---

[1] The First Step Act can be found at: https://www.congress.gov/bill/115th-congress/senate-bill/756/text#toc-id368aca90db704a939b75a29fa150c3f7.

imprisonment). *Id.* at 5213. Congress also amended the method for prorating good conduct time for a partial year of a sentence imposed by a court. *Id*. at 5210.

**C.     The Recalculation of Petitioner's Good Time Credit is Premature**

As stated previously, Granados seeks the immediate recalculation of his entitlement to good time credits pursuant to the First Step Act so he can receive 54 days instead of the 47 days per year, which would make him eligible for an earlier release and placement in a residential reentry center. However, Granados cannot obtain such relief because the new method of calculating good time credit under the First Step Act is not yet in effect.

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (citations omitted); *see also United States v. Ways*, 832 F.3d 887, 893 (8th Cir. 2016) (citing *Johnson v. United States*, 529 U.S. 694, 702 (2000)) ("When a statute does not specify its effective date, and there is no clear congressional directive to the contrary, the statute takes effect on the date it is enacted."). When interpreting a statute, a court must "begin by analyzing the statutory language, 'assuming that the ordinary meaning of that language accurately expresses the legislative purpose." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (cleaned up) (quoting *Gross v. FBL Fin. Sers., Inc.*, 557 U.S. 167, 175 (2009)). If the statute's language is plain, the court's sole function is to enforce the statute according to its terms, unless it leads to an absurd result. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where

the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

While the First Step Act was enacted on December 21, 2018, Congress set forth its clear intention through the plain language of Section 102(b) that the amendments relating to the recalculation of good time credit do not go into effect until the Attorney General develops and releases a new risk and needs assessment. The amendment to Section 3624(b) is found within Section 102(b)(1)(A) of the First Step Act. *See* 132 Stat. at 5209-10. Section 102(b) provides that the effective date for "this subsection"[2] as follows:

> EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, **as added by section 101(a) of this Act**.

132 Stat. at 5213 (emphasis added).

---

[2]   A general rule of legislative drafting is that the lower-case letter under a section is referred to as a "subsection" and the numeral below the subsection is referred to as a "paragraph." *See* U.S. House of Representatives, Office of the Legislative Counsel, "Guide to Legislative Drafting," at https://legcounsel.house.gov/HOLC/Drafting_ Legislation/ Drafting_Guide.html. "The terminology for referring to units within a section has become highly standardized and should be carefully followed to avoid confusion." *Id.* Thus, the effective date applies to the entirety of Section 102(b) and not just certain paragraphs of Section 102(b) as argued by Granados (Dkt. No. 2 at 7-8). *See Musgrove v. Ortiz*, No. CV 19-5222 (NLH), 2019 WL 2240563, at *3 (D.N.J. May 24, 2019); *see also Costa v. M. Parr*, No. 119CV00318LJOJDPHC, 2019 WL 2490657, at *4 (E.D. Cal. June 14, 2019) ("Here, the plain language of the statutory text indicates that the delayed effective date in Section 102(b)(2) applies to the entirety of Section 102(b); we see no ambiguity.").

7

Pursuant to Section 101 of the First Step Act, the Attorney General must develop and release the new risk and needs assessment within "210 days from its enactment," which will occur on or about July 19, 2019. *See* 132 Stat. at 5196. Based on the above unambiguous language of Section 102(b) of the First Step Act, the Court finds that amendments relating to the recalculation of good time credits are not yet in effect. As such, this Court has no authority at this point to order the BOP to recalculate the amount of good time credit to which Granados may be entitled to under the First Step Act. While the Court acknowledges that such an interpretation may adversely impact Petitioner in terms of the amount of residential reentry center he receives prior to his release, the Court may not interpret the First Step Act in a manner contrary to its unambiguous plain language in order to avoid a possible burden to Granados. *See Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."); *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991) (citation omitted) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."). Moreover, the delay of the effective date is not an absurd interpretation of the First Step Act given the Government's assertion (Dkt. No. 9 at 9) that the delay will allow the BOP to identify which inmates will be releasing on the effective date or shortly thereafter so that BOP staff can then make appropriate plans for their release, including a potential placement in a residential reentry center, transportation to their release district, and continuity of care for those inmates with medical or mental health concerns. *See also* 132 Stat. at 5196-98

(addressing what should be included as part of the development of risk and needs assessment system); *Edward S. Robertson, Petitioner, v. R. Marques, Warden, Respondent.*, No. 19-CV-1009 (WMW/SER), 2019 WL 2476616, at *3 (D. Minn. May 8, 2019), *R.&R. adopted*, 2019 WL 2464805 (D. Minn. June 13, 2019) ("Moreover, Respondent has identified valid reasons for honoring the delay in the First Step Act's effective date established by Congress, including permitting the BOP the opportunity to make plans for the inmates that are set to be released following recalculated good time credits.").

Granados also argues that good-time-credit amendments apply immediately because Congress's intent behind the First Step Act was to correct a mistake under the Sentencing Reform Act of 1984. (Dkt. No. 2 at 8-10.) Granados relies on *Gozlon-Peretz v. United States*, 498 U.S. 395 (1991), in support of this position. (*Id.* at 9.) In *Gozlon-Peretz*, the Supreme Court found with respect to the Anti-Drug Abuse Act ("ADAA") that "[g]iven the apparent purpose of the legislation to rectify an earlier mistake, it seems unlikely that Congress intended the effective date to be any time other than the date of enactment." *Id.* at 405. However, as set forth above, the Supreme Court specifically reiterated that "absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Id.* at 404 (citations omitted). Moreover, the Supreme Court, before looking at the remedial intent of Congress as it related to the ADAA, noted that "§ 1002, like many other congressional enactments, contains no provision for its effective date. Nor is there an effective date specified for the ADAA as a whole." *Id.* In contrast, the First Step Act explicitly provides an effective date for Section 102(b), as discussed

9

above. Given the clear direction regarding the effective date of First Step Act in the plain text of the statute, the Court will not consider the legislative history or intent of the First Step Act so as to divine an alternative effective date.

The Eighth Circuit has not yet ruled on the effective date of Section 102(b) of the First Step Act. However, the majority of the district courts that have ruled on this issue have concluded that the amendment to § 3624(b)(1) related to good time credits does not take effect until the Attorney General has completed his development and release of the new risk and needs assessment, which must occur by sometime in mid-July (on or about July 19, 2019). *See, e.g.*, *Thompson v Warden*, No. 219CV00089JRSDLP, 2019 WL 2412580, at *3 (S.D. Ind. June 7, 2019); *Rhodes v. United States*, No. 0:19-CV-047-HRW, 2019 WL 2273848, at *2 (E.D. Ky. May 28, 2019); *Musgrove,* 2019 WL 2240563, at *2-3; *United States v. Murgia*, No. 3:10-CR-0076-01-HRH, 2019 WL 2236067, at *3 (D. Alaska May 22, 2019); *Dailey v. Bureau of Prisons*, No. CV 1:19-0662-RMG, 2019 WL 2089167, at *1 (D.S.C. May 13, 2019); *Pizarro v. White*, No. 1:19-cv-343, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019); *Christopher v. Wilson*, Civil Action No. 4:19-cv-214-O, 2019 WL 1745968, at *1-2 (N.D. Tex. Apr. 18, 2019); *Matthews v. Williams*, Case No. 4:19CV518, 2019 WL 1639776, at *2 (N.D. Ohio Apr. 16, 2019); *Roy v. United States Bureau of Prisons*, NO: 2:19-CV-59-RMP, 2019 WL 1441622, at *1-2 (E.D. Wash. Apr. 1, 2019); *but see United States v. Mark John Walker*, Case No. 3:10-cr-00298-RRB-1 (D. Or. Feb. 7, 2019) (order requiring immediate recalculation under the First Step Act without any analysis of the language of the Act) (Dkt. No. 6-2).

Accordingly, Granados's argument that he is entitled to immediate relief lacks merit, and his request for a recalculation of his good time credit based upon the amendments is premature.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein**, IT IS RECOMMENDED THAT** Petitioner Sergio Granados's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**.

Dated: June 26, 2019            *s/Elizabeth Cowan Wright*
                                ELIZABETH COWAN WRIGHT
                                United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Pursuant to Local Rule 72.2(b), the Court sets the following deadlines: a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 10 days after being served a copy of the Report and Recommendation. A party may respond to those objections within 7 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).